Judge ROLLINS, and was adopted by the legislature at his instance. Its object was to enable the surrogate to select an assistant to take such material, competent, and relevant evidence—and such only—as pertained to the issues before the court, and thus afford the surrogate some aid in disposing of the great and constantly increasing volume of business with which the court was being overburdened, and to permit of its being transacted with reasonable expedition. The plain language and import of the amendment show that the selection of the assistant was left to the absolute discretion of the surrogate. To say, however, that the effect of the enactment is that the person selected is permitted to be chosen to perform the simple clerical service of noting down, without authority to rule thereon, all the evidence which the parties may see fit to produce, with the objections raised thereto, would increase, instead of relieving, the labor of the court, and defeat the very object sought to be accomplished by the amendment. The power now questioned has, with the approval of, and in pursuance of, the construction given to the provision by Judge ROLLINS, been invariably exercised by the assistant who was appointed by him to take testimony in probate cases. His construction and practice accord with my own, and are warranted by the amendment in question. The objection of the contestant to the competency of the court to designate the assistant without the consent of the parties, and of the power of the latter to pass upon objections to the admissibility of evidence taken before him, is overruled.

A witness was called by the contestant and examined as to his knowledge of the handwriting of the alleged testator for the purpose of qualifying him to testify as to the genuineness of the signature purporting to be that of the alleged testator to the alleged will. The witness testified that he had seen the testator sign, elsewhere than at the lodge to which he belonged, a certain check, and that he had also seen him write in the lodge, and that its records were signed by the members. He was asked by contestant's counsel if he had ever seen on the records of the lodge the signature of the testator. To this question the proponent's counsel objected. The objection was sustained and contestant's counsel excepted. Witness was then asked whether either of the signatures upon the will purporting to be those of the alleged testator was, in his judgment, in the handwriting of such testator, and on objection of proponent's counsel he was precluded from testifying otherwise than from knowledge derived from signature on the check mentioned as to the genuineness of the signature upon the will. The learned law assistant was in error in thus restricting the witness to testifying from his knowledge so derived, and not permitting him to testify as well from knowledge acquired from seeing him write in the lodge, and from his signature in the records thereof. This error will necessitate a rehearing of the case. To this end I have deemed it advisable to send the case to the court of common pleas for trial and decision. I shall enter an order accordingly.

---

## In re GRABER'S WILL.

(*Surrogate's Court, New York County.* February 8, 1889.)

WILLS—PROBATE.

> Testatrix's estate consisted of savings from her husband's earnings, deposited in several banks in her name, and contestant alleged that the will was intended to refer to two bank-books, and not to four others, but that the latter belonged to the husband, and that as to those she died intestate. Her instructions were followed in drawing the will, and were that she wished to leave everything she possessed to the legatees. *Held* that, though there was sufficient evidence that she believed the moneys represented by the four books were the husband's, probate should be allowed as to the six books, and should not be limited to the two.

In the matter of the probate of the will of Margaretha Graber, deceased.

*Frederick W. Holls*, for proponent. *Gwillin & Myers*, for contestant. *W. H. Hamilton*, special guardian.

RANSOM, S. No question is raised in this matter as to the formalities of execution or competency of testatrix. Contestant claims that it does not represent her intentions. The testatrix was a woman of middle age, who had been for many years an invalid. Her husband was a mechanic, and the estate represents the savings from his earnings, which had been deposited in various savings banks in the wife's name. All of their children had died. It is claimed by counsel for the contestant that the will of the testatrix was intended to refer to but two of the bank-books, and that as to the balance of the funds represented by the four other bank-books she was not the owner, but that they belonged to her husband, and that as to those she died intestate. While there is probably sufficient proof to warrant a finding that the testatrix believed that the moneys represented by the four other books were the property of her husband, no grounds are stated, and no facts proven, to show a reason for the distinction between them and the other two. The manner in which the funds were deposited is identical. They came, as far as proven, from the same source; and, if the husband is found to be the owner of the four, he must be the owner of all. It is abundantly proven that the draughtsman followed the instructions given to him at the time of the drawing and execution of the will. The case of *Burger* v. *Hill*, 1 Bradf. Sur. 364, is strongly relied upon by contestant as sustaining his claim. In that case the testator devised all his real estate to his mother and sisters, and gave all his personal estate to his mistress for life, with remainder to her daughter, who was his illegitimate child. The draughtsman asked him if he had any real estate, and he replied that the store in which he carried on business he owned. It subsequently appeared by parol evidence that this property, which he supposed to be real estate, was in fact leasehold, and consequently personal estate; and the surrogate excepted from the decree of probate that property, as to which he declared he died intestate, so that the mother and sister, whom testator supposed would receive this property as real estate under the will as drawn, received it as next of kin. In that case the surrogate really determined upon a question of mistake or error relating to the *factum* of the instrument, and decided that, were it necessary to correct an error in order to meet the intention of the testator, probate may be limited to particular assets. In this case there is no question of mistake or error as to the *factum* of the will. The instructions were clear that the testatrix wished to leave everything she possessed to her sisters and nieces. It is not established whether the testatrix considered her will applied to the moneys represented by all the bank-books, or only the two; but, in either event, this court could not refuse probate entirely, or as to a portion of her estate. Suppose the testatrix believed all the moneys belonged to herself, would it be claimed that the property would not pass by this will, and that the contestant would not be relegated to another tribunal for relief? Suppose she believed all the moneys were not her own, and that, as a matter of fact, it was her impression that the will applied only to the two bank-books, will it be contended that this court, in a proceeding for probate, may enter a decree establishing a trust resulting from the manner in which the other funds were deposited? I cannot perceive in what manner any hardship is inflicted upon the contestant by admitting the will. The same proof which he claimed entitles him to relief in this court denying probate as to a part of the assets, in another tribunal would establish that the funds were really held in trust for and belonged to him. But all this rests upon mere conjecture and assumption. The intention of the testatrix is to be sought from the writing, and from the known meaning and force of the words used, instead of resorting to conjecture. There are well-established rules of construction which cannot be violated from a suspi-

cion that, if the testatrix had foreseen the consequences of her disposition, she would have provided otherwise. "The question is not what the testatrix had in contemplation when she made the will, but what the words used will embrace according to their ordinary signification, which must prevail unless qualified by other expressions in the instrument." *Sweet* v. *Geisenhainer*, 3 Bradf. Sur. 122. Let a decree be presented admitting the will.

------

### In re CLARK'S ESTATE.

*(Surrogate's Court, New York County.* March 4, 1889.)

DESCENT AND DISTRIBUTION—COLLATERAL INHERITANCE TAX—CONTINGENT ANNUITIES.
When an annuity is left to persons for life, who are exempt from the collateral inheritance tax, with contingent remainder over, to persons not exempt, Laws 1885, c. 483, does not authorize the taxation of the contingent annuity, but the appraiser should report the market value of such contingent interest at the date of the decedent's death, and leave the taxation for future action.

On report of the appraiser of the estate of Mary C. Clark, to ascertain the amount of the collateral inheritance tax. Objections were filed by W. Irving Clark.

*Benjamin F. Dos Passos,* Asst. Dist. Atty., for the Comptroller. *John M. Knox, Jr.,* for objector.

RANSOM, S. The question here is, has the appraiser erred in reporting the value of the contingent annuities under chapter 483 of the Laws of 1885? If not, should he have further reported them as now subject to taxation? Counsel for executors contends that it is impossible to fix the value of the contingent annuities until the death of the present living annuitants (who are not subject to the tax) should happen. It is contended, on the other hand, that when the amount can be ascertained the surrogate must assess and fix the tax, even though the person who is interested in the contingent estate may never come into the actual possession or enjoyment of such property; that this proceeding is a proceeding *in rem,* and consequently follows the property. To make the tax accrue at once, two things are necessary: *First,* to determine definitely the fair market value of the property subject to the tax; and, *second,* the person to whom such property passes. The first proposition can be ascertained with sufficient accuracy for the purposes of taxation, but the second cannot be definitely determined until the death of the life-tenant. "The tax is not imposed upon the estate of which she was seised or possessed, but only upon so much of it as passes to certain persons; not all persons or any person. ＊ ＊ ＊ There are many other provisions of the act requiring the same construction, all tending to show that in the matter of taxation it is simply the 'estate' or share of the beneficiary acquired through the will, or the statute of distributions, which is to be valued, and the duty estimated according to its value." *In re Howe,* 19 N. E. Rep. 513. The duty of the appraiser to report the value of these contingent annuities is settled by the court of appeals in *Re Cager,* 18 N. E. Rep. 866, RUGER, C. J.: "When the present value of property which is devised to one, with a limitation over to others upon the happening of some event which may or may not occur, can be ascertained, then a ground upon which an approximate estimate of the value of the ultimate devise appears, and it may be made." Nothing is said about the assessment or ·payment of the tax, although the court said that contingent estates might be appraised if their value could be ascertained. The question is, can the tax be assessed and fixed? The executor cannot diminish the funds which produce the annuities. The contingent annuitants cannot be required to pay for something they may never receive. The act does not say that where property is left to A., an exempt person, for life, with a contingent life-estate to B., that A. shall be taxed to pay for B.'s prospective enjoyment, even